

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00597-CV

**IN THE INTEREST OF J.J.H.**, R.J.H., J.D.H., and A.J.H., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00902
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: February 12, 2020

AFFIRMED

The appellant ("Mother") appeals the trial court's order terminating her parental rights to her four children, J.J.H., R.J.H., J.D.H., and A.J.H. At the time of trial in August 2019, the children were ages nine, eight, seven, and six, respectively. In a single issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the children. We affirm.

### BACKGROUND

The Texas Department of Family and Protective Services (the "Department") first became involved with Mother and the children in April 2017. At that time, the children were living with their maternal grandmother in Eagle Pass, Texas, and Mother and the children's father ("Father") were incarcerated in federal prison for the illegal transportation of unauthorized aliens. The

Department's caseworker testified that the case began as a family-based case because the two older children were having behavioral issues at school. These issues included hurting other children and hurting each other with a lighter.

Mother was released from prison soon after the Department became involved and moved to a halfway house in Del Rio, Texas. Soon thereafter, Mother moved to the maternal grandmother's home in Eagle Pass, and later Mother moved with her children to her own home in Eagle Pass. In May 2017, Father was released from prison and moved in with Mother and the children.

Mother testified that in Eagle Pass she worked in a café. When she was at work and when the children were out of school, the maternal grandmother and Father watched the children. Mother testified that the maternal grandmother once called Mother at work and told her that Father was under the influence of drugs. The eldest child also told Mother that Father was using drugs and "acting crazy" by hitting himself on the walls and hitting his head. Mother testified that Father hit her many times in front of the children. The children were scared of Father and went to stay with their maternal grandmother. Mother testified that she separated from Father at that time but, nevertheless, remained in contact with him. In July 2017, Mother moved with her children to San Antonio, Texas. According to the caseworker, Mother told her that she moved to get away from family and from the Department. Mother testified that she moved to attend college but that she dropped out a month after enrolling. The Department transferred the case from Eagle Pass to San Antonio.

On April 30, 2018, the Department filed a petition to terminate Mother's parental rights because it discovered that Mother had stopped administering the children's psychiatric medication. Mother acknowledged at trial that she knew her children needed medication but failed to administer it. After a three-day bench trial, the trial court terminated Mother's parental rights to

her children, concluding that Mother: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical and emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical and emotional well-being; and (4) failed to comply with the provisions of a court order specifically establishing the actions necessary for Mother to obtain the return of her children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O). The trial court also found that termination was in the children's best interest. *Id.* § 161.001(b)(2). Mother timely appealed. In her sole issue, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's best-interest finding.

## STANDARD OF REVIEW

A parent-child relationship may be terminated only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in section 161.001(b)(1) of the Family Code and that termination is in a child's best interest. *Id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we "must give due consideration to evidence that the factfinder could reasonably have found

to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## BEST INTEREST

There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a parent is willing and able to provide a child with a safe environment, a court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with

minimally adequate health and nutritional care; care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; guidance and supervision consistent with the child's safety; a safe physical home environment; protection from repeated exposure to violence even though the violence may not be directed at the child; and an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

Additionally, our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

Mother argues that the Department focused its arguments at trial on the predicate grounds for termination and that the *Holley* factors were largely ignored. However, the Department was not required to prove every factor. *See id.* Although the record contains some evidence in Mother's favor, there is substantial evidence related to the *Holley* factors that supports the trial court's best-interest finding.

*1.  Desires of the Children*

The caseworker testified that the children are capable of forming their own desires and have expressed a desire to be with Mother.  The caseworker also testified that the children love Mother.  The mental health therapist for the two oldest children, J.J.H. and R.J.H., testified that these children love Mother and desire to return to Mother's home.  The therapist also testified that the two oldest children have anxiety about not being able to return to Mother's home.  The behavioral support specialist for the two youngest children, J.D.H. and A.J.H., affirmed that these children love Mother and wish to be returned to her.  However, the mental health therapist for the two youngest children testified that the children do not know whom to trust.  According to the therapist, although the two youngest children are forgiving of Mother and wish to be reunited, they are also angry at her because they were removed.  The therapist described these children's bond with Mother as a "negative bond."

*2.  Emotional and Physical Needs of the Children Now and in the Future and the Emotional and Physical Danger to the Children Now and in the Future*

"The needier the child, the more able the parent must be."  *In re E.R.*, 555 S.W.3d 796, 809 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (quoting *In re A.L.M.*, 300 S.W.3d 914, 919 (Tex. App.—Texarkana 2009, no pet.)); *see also* TEX. FAM. CODE ANN. § 263.307(b)(1) (providing that a child's age and physical and mental vulnerabilities are relevant to a best-interest determination); *id.* § 263.307(b)(6) (providing that psychiatric, psychological, and developmental evaluations of a child are relevant to a best-interest determination).

The record establishes that all of the children have mental health needs that will continue into the future.  The therapist for the two oldest children testified that J.J.H. and R.J.H. display symptoms of anger and oppositional behavior.  In addition, R.J.H. has anxiety.  The therapist testified that she meets with the older children weekly and that therapy is improving R.J.H.'s

anxiety. The Department's caseworker testified that the two oldest children take psychiatric medication. The oldest child, J.J.H., has been to the psychiatric hospital twice since she was removed because she threatened to hurt herself and she pushed her foster parents. The second oldest child, R.J.H., threatened to kill himself when he was moved to foster care and ran off. He too was hospitalized.

The mental health therapist for the two youngest children, J.D.H. and A.J.H., testified that the children were guarded; the children told their therapist that they had been directed by Mother to not talk about their home or discuss certain matters, such as "any issues with abuse." According to the therapist, while the children were residing with Mother, they would be yelled at and then hit or spanked with shoes, hangers, or by hand. In addition, J.D.H. and A.J.H. told their therapist that Mother would retire to her bedroom for long periods of time, usually with men, and the children would be left alone without adult supervision. During these times, the children would often go hungry. The therapist testified that the youngest child, A.J.H., experiences periods when she becomes very upset. According to the therapist, both children have difficultly controlling their fear and establishing trust, and they need a caregiver able to understand their mental health issues.

Substantial evidence in the record also suggests that the children face present and future emotional and physical danger if returned to Mother based on her past conduct. *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("A trier of fact may measure a parent's future conduct by his past conduct . . . ."). The trial court found that Mother's actions and omissions endangered the children, a finding Mother does not contest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); *In re C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest).

At trial, Mother acknowledged that she understood the children needed psychiatric medication when they were in her care but she, nevertheless, failed to administer it. The two

youngest children made outcries of physical abuse to their therapist that included hitting or spanking with shoes and hangers. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (providing that a history of abusive or assaultive conduct by the child's family is relevant to a best-interest determination). The two youngest children also reported hunger due to Mother's neglect. *See id.* § 263.307(b)(12)(A), (C) (providing that courts may consider whether a parent has adequate skills to provide the child with minimally adequate health and nutritional care and with guidance and supervision consistent with the child's safety). In Eagle Pass, the children were exposed to Father's drug use and domestic violence against Mother. *See id.* § 263.307(b)(7); *id.* § 263.307(b)(8) (providing that a history of substance abuse by the child's family or others who have access to the child's home is relevant to the best-interest determination); *id.* § 263.307(b)(12)(E) (providing that courts may consider whether a parent has adequate skills to protect the child from repeated exposure to violence although violence may not be directed at the child). Mother testified that she remained in contact with Father, who would call and curse at Mother. According to the psychologist who evaluated Mother, Mother stated that she would take Father back after problems arose in their relationship.

*3. Parenting Abilities and Services Available*

The trial court's best-interest finding is also supported by evidence of Mother's inadequate parenting abilities, stemming in part from Mother's untreated mental health issues. "A parent's mental illness or disability, without more, is not grounds for terminating the parent-child relationship. However, if a parent's mental state causes her to engage in conduct that endangers the physical or emotional well-being of a child, that conduct can be considered in a termination proceeding." *In Interest of R.S.-T.*, 522 S.W.3d 92, 113 (Tex. App.—San Antonio 2017, no pet.) (citations omitted); *see also In re P.H.*, 544 S.W.3d 850, 858 (Tex. App.—El Paso 2017, no pet.) (upholding termination where a mother neglected her children and failed to provide basic care for

them due, in part, to mental illness); *In re M.C.*, No. 02-15-00290-CV, 2016 WL 354186, at \*4–5 (Tex. App.—Fort Worth Jan. 28, 2016, no pet.) (mem. op.) (upholding best-interest finding in support of termination where evidence showed a mother refused to treat her ongoing mental health issues or complete court-ordered services although the record also showed that the mother did not have a drug or alcohol problem, was employed, and maintained a residence).

At trial, Mother acknowledged a long history of mental illness, which often went untreated. As a child, Mother was diagnosed with bipolar disorder and was treated with medication and therapy. After the Department removed the children, the trial court ordered Mother to undergo a psychological evaluation and attend therapy. The psychologist who evaluated Mother testified that Mother acknowledged she suffered from symptoms of anxiety and depression and had a history of manic symptoms. According to the psychologist, Mother needed medication to modify her behavior, and treatment of Mother's disorders would usually include therapy. The psychologist further testified that if Mother did not address her mental health needs, this failure could exacerbate the children's mental health issues. A psychiatrist also evaluated Mother. He testified that Mother suffered from major depressive disorder, panic disorder, attention deficit hyperactivity disorder, and post-traumatic stress disorder. The psychiatrist testified that Mother's symptoms would worsen over time without treatment. According to the psychiatrist, Mother could care for her children if she were appropriately medicated, but her ability to parent could be impaired without medication and therapy. Mother testified that she had not taken the medication prescribed by her psychiatrist. The Department's caseworker testified that Mother had been discharged from therapy three times for nonattendance.

On this record, the trial court could infer that Mother's failure to address her mental health issues undermined her ability to meet the physical and emotional needs of her children, who also required mental health care. Although Mother testified that she had reengaged with therapy just

before trial, her reengagement does not negate her long history of failing to address her or her children's mental health needs. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices."); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services).

### 4. Stability of the Home or Proposed Placement

Mother was employed at the time of trial, and she testified that she had beds for her children and a place to live. Although this is some evidence of stability, evidence was also adduced from which the trial court could infer the instability of Mother's home, including evidence that Mother neglected her mental health needs. *See In re R.J.*, 579 S.W.3d 97, 118–19 (Tex. App.—Houston [1st Dist.] 2019, no pet. h.) (explaining that a trial court could infer the instability of a parent's home from evidence suggesting that the parent was not receiving adequate mental-health treatment). Mother's prior incarceration is also some evidence of instability. *See In re D.M.*, 58 S.W.3d 801, 817 (Tex. App.—Fort Worth 2001, no pet.) ("[A parent's] inability to maintain a lifestyle free from arrests and incarcerations[] is some evidence that termination would be in the children's best interest.").

At the time of trial, the two older children were living at a foster care facility. According to the caseworker, the eldest child had shown some improvement, and the second oldest child was doing well; however, the behavior of each child was inconsistent. The two youngest children were living in a foster home. The second youngest child was doing well, but the youngest child exhibited oppositional behavior. According to their therapist, the two youngest children have progressed since their removal. Both children experience nightmares, and their foster mother has been receptive to feedback on how to limit potential triggers. The therapist testified that spanking

has never occurred at the foster home and the girls are now able to verbalize their fear of being spanked. The foster mother was willing to adopt the four children, but the caseworker acknowledged that it would take significant work before that happened. *See In re C.H.*, 89 S.W.3d at 28 (holding termination may be in a child's best interest "even if the agency is unable to identify with precision the child's future home environment").

### 5. *Any Excuse for the Acts or Omissions of the Parent*

Mother testified that she stopped administering medicine to her children because the second oldest child cried that his heart hurt from his medicine. Mother told the psychiatrist who evaluated her that she stopped administering the children's medicine because she thought the medicine was too strong. According to the psychiatrist, Mother should have consulted with a doctor if she had concerns about the medicine. Mother provided no excuses for her failures to take her psychiatric medicine or attend therapy for the duration of the case.

Viewing all of the evidence in the light most favorable to the best-interest finding and applying the *Holley* factors, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### CONCLUSION

We affirm the trial court's order.

Rebeca C. Martinez, Justice