ANN CRAWFORD McCLURE, Chief Justice *854 This appeal is from a judgment terminating the parental rights of L.H. to her daughter. We affirm.
FACTUAL SUMMARY
L.H., hereinafter referred to as "Laura," is the biological mother of one-year-old "Penny."[1] Laura has four other biological children ranging in age from about three to seventeen years of age. All four of these children have been removed from Laura's care and her parental rights to two of the children have been terminated. Laura's mother, Ava, adopted one of the children, and she is the managing conservator of two of the other children. Ava and these children live in California. Laura's brother adopted the fourth child. According to Ava, Laura has mental illness and behaves erratically when she does not take her medication. Ava further explained that Laura usually did not take her medication and this was a source of conflict between them. Laura frequently "took off" with one or more of the children and moved from state to state. The children were removed at different points in time because Laura did not provide care for them. Laura sometimes fed the children candy rather than nutritious food, and she had trouble waking up to take them to school or pick them up later in the day. One of the children suffered a burn injury and she left another child locked inside of a U-Haul truck.
In 2016, Laura was pregnant and living alone in Sierra Blanca, Texas, in a small storage shed without electricity, heat, plumbing, or running water. She explained that she had moved to Texas to buy a ranch "with no money down" but the property did not have electricity, sewage lines, or water. Laura has been receiving assistance from the Emergence Health Network (EHN) since November 23, 2015, and she regularly attends EHN counseling sessions. EHN worked with Laura to help her obtain a Texas ID card and bus pass and *855 to also teach her basic skills needed for daily life, such as personal hygiene, taking medication daily, and money management. As the designated payee of Laura's SSI, EHN pays her rent[2] and other bills. On the night Laura went into labor in January 2016, she was found wandering the streets in Sierra Blanca when the temperature was in the lower 30's. An acquaintance took her to the jail so she would have a warm and safe place to sleep. When Laura went into labor, EMS transported her to El Paso. After Penny was born, hospital personnel observed that Laura was exhibiting cognitive deficits and a psychiatric examination was conducted. The examination revealed that Laura did not have the cognitive ability to care for her newborn child, she could not make decisions for herself, and she was having difficulty caring for herself without supervision. Consequently, the hospital made a report to the Department. The Department substantiated the allegations of neglectful supervision and removed the three-day old child from Laura's care. The trial court granted the Department temporary custody of Penny, and the Department placed her with Ava in California. Laura has lived in El Paso since Penny was born.
The Department developed a service plan for Laura and the trial court ordered her to comply with each of its requirements. The service plan required Laura to participate in parenting classes and counseling to address personal issues surrounding the removal of her children. The requirement that Laura attend parenting classes gave her an opportunity to learn parenting skills and demonstrate that she could provide long-term care for the child. Laura did not, however, attend the parenting classes. Laura testified that she attended the counseling sessions, but the evidence showed that she was referring to the EHN counseling sessions. The service plan also required Laura to attend visitations with Penny. Laura attended some but not all of the scheduled visitations. She satisfied the service plan's requirements that she participate in a psychological evaluation and OSAR assessment.
The Department filed a termination petition alleging that Laura: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child ( Section 161.001(b)(1)(D), Texas Family Code ); (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child ( Section 161.001(b)(1)(E), Texas Family Code ); and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child ( Section 161.001(b)(1)(O), Texas Family Code ). The trial court found that the Department had proven the termination grounds under Section 161.001(b)(1)(E) and (O) by clear and convincing evidence, and that termination of Laura's parental rights were in the child's best interest. The trial court appointed the Department as the permanent managing conservator of the child.
*856 TERMINATION GROUNDS AND BEST INTEREST UNDER SECTION 161.001
Laura raises three issues challenging the legal and factual sufficiency of the evidence supporting the trial court's findings. In Issues One and Two, Laura attacks the legal and factual sufficiency of the evidence supporting the two predicate termination grounds found by the trial court under Section 161.001(b)(1). In Issue Three, she challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under Section 161.001(b)(2).
Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. See TEX.FAM.CODE ANN. § 161.001 (West Supp. 2017). Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. See id. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. Texas Department of Human Services v. Boyd , 727 S.W.2d 531, 533 (Tex. 1987) ; In the Interest of A.B.B. , 482 S.W.3d 135, 138 (Tex.App.-El Paso 2015, pet. dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. In re A.V. , 113 S.W.3d 355, 362 (Tex. 2003). We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights as well as the finding of best interest. J.S. v. Texas Department of Family and Protective Services , 511 S.W.3d 145, 159 (Tex.App.-El Paso 2014, no pet.).
Standards of Review
When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." In the Interest of J.P.B., 180 S.W.3d 570, 573 (Tex. 2005), quoting In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002) ; see In re J.O.A., 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. In the Interest of J.P.B. , 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. In re J.P.B. , 180 S.W.3d at 573 ; In re J.F.C. , 96 S.W.3d at 266.
In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. See In re J.F.C. , 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. In re J.F.C. , 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. Id. If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a *857 firm belief or conviction, then the evidence is factually insufficient. Id.
Section 161.001(b)(1)(E)
In Issue One, Laura argues that the evidence is legally and factually insufficient to support termination of her parental rights under Section 161.001(b)(1)(E) of the Family Code. See TEX.FAM.CODE ANN. § 161.001(b)(1)(E). If the evidence is legally and factually sufficient to support this termination ground, it is not necessary to address the sufficiency challenge raised in Issue Two regarding the finding under Section 161.001(b)(1)(O).
The trial court found by clear and convincing evidence that Laura engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangered the physical or emotional well-being of the child. The term "conduct," as used in Section 161.001(b)(1)(E), includes both the parent's actions and failures to act. In re M.J.M.L. , 31 S.W.3d 347, 351 (Tex.App.-San Antonio 2000, pet. denied). To "endanger" means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. Texas Department of Human Services v. Boyd , 727 S.W.2d 531, 533 (Tex. 1987) ; J.S. v. Texas Department of Family and Protective Services , 511 S.W.3d 145, 159 (Tex.App.-El Paso 2014, no pet.). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. See In re M.R.J.M. , 280 S.W.3d 494, 503 (Tex.App.-Fort Worth 2009, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. Castaneda v. Texas Department of Protective and Regulatory Services , 148 S.W.3d 509, 522 (Tex.App.-El Paso 2004, pet. denied).
Under Section 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. See In re J.T.G. , 121 S.W.3d 117, 125 (Tex.App.-Fort Worth 2003, no pet.). Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. Id. When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born. See In re J.O.A. , 283 S.W.3d 336, 345 (Tex. 2009) ; In re B.C.S. , 479 S.W.3d 918, 926 (Tex.App.-El Paso 2015, no pet.) ; In re S.M. , 389 S.W.3d 483, 491-92 (Tex.App.-El Paso 2012, no pet.).
Endangering conduct is not limited to actions directed towards the child, and endangerment may be established by the parent's actions before the child's birth while the parent had custody of older children. In re J.OA. , 283 S.W.3d at 345. Further, "neglect can be just as dangerous to the well-being of a child as direct physical abuse." In re M.C. , 917 S.W.2d 268, 270 (Tex. 1996). The evidence, when considered in the light most favorable to the finding, showed that Laura's four older children were removed from her care due to neglect. Laura frequently and randomly moved from state to state and she failed to provide basic care for the children. This pattern continued even after she became pregnant with Penny. Prior to Penny's birth, Laura lived in California with her mother, but she moved to Texas where she has no family support system. Laura was pregnant and homeless when *858 she sought assistance from EHN in November 2015, and she was living in a storage shed without utilities or plumbing in January 2016 when she went into labor with Penny.
There is also evidence that Laura has untreated mental illness which has caused Laura to engage endangering the lives of all of her children, including Penny. Following Penny's birth in January 2016, Laura exhibited cognitive deficits which caused hospital personnel to be concerned that she could not care for her child. A psychological evaluation conducted in the hospital confirmed that Laura did not have the cognitive ability to care for her newborn child. When Laura sought services from EHN, she reported that she had a history of mood and bipolar disorders and she had taken psychotropic medications in the past but she had not taken them since 2014. Dr. James W. Schutte evaluated Laura during this case and diagnosed her with bipolar disorder and borderline intellectual functioning. Ava testified that Laura does well when she takes her medication, but she frequently does not take it. Ava also explained that when Laura does not take her medication, she behaves erratically and does not care for the children. Laura visited the children in Ava's home just two weeks before trial and she told Ava that she was not taking her medication. Mental illness is not a ground for terminating the parent-child relationship, but untreated mental illness can expose a child to endangerment and is a factor the court may consider. In re S.R. , 452 S.W.3d 351, 363 (Tex.App.-Houston [14th Dist.] 2014, pet. denied). Under these facts, the trial court could have concluded that Laura's untreated mental illness exposed Penny to endangerment. See In re A.L.H. , 515 S.W.3d 60, 91 (Tex.App.-Houston [14th Dist.] 2017, pet. ref'd) (parent's persistent and untreated mental illness viewed as evidence of endangerment).
The trial court could have considered Laura's failure to complete significant requirements of the service plan as part of the analysis under Subsection 161.001(b)(1)(E). The Department developed a service plan for Laura and the trial court ordered her to comply with each of its requirements. The service plan required Laura to participate in parenting classes and individual counseling to address personal issues surrounding the removal her children. The requirement that Laura attend parenting classes gave her an opportunity to learn parenting skills and demonstrate that she could provide long-term care for the child. Laura did not, however, attend the parenting classes. As a result of Laura's limited ability to care for herself and failure to complete the service plan requirements, the caseworker remained concerned that Laura could not provide a safe and stable environment for Penny. Based on this evidence, the trial court could have formed a firm conviction or belief that Laura engaged in conduct that endangered Penny's emotional and physical well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. Issue One is overruled. Having overruled Issue One, it is unnecessary to address Issue Two.
Best Interest-Legal Sufficiency
In Issue Three, Laura challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under Section 161.001(b)(2) of the Family Code. A determination of best interest necessitates a focus on the child, not the parent. See In the Interest of B.C.S. , 479 S.W.3d 918, 927 (Tex.App.-El Paso 2015, no pet.) ; In the Interest of R.F. , 115 S.W.3d 804, 812 (Tex.App.-Dallas 2003, no pet.). There is a strong presumption *859 that it is in the child's best interest to preserve the parent-child relationship. In re B.C.S. , 479 S.W.3d at 927. The Texas Supreme Court has enumerated certain factors which should be considered: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. Holley v. Adams , 544 S.W.2d 367, 372 (Tex. 1976) ("the Holley factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. In re B.C.S. , 479 S.W.3d at 927.
We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the child. Penny was sixteen months of age took place in May 2017. There is no evidence indicating that Penny had the ability to articulate her wishes. When a child is too young to express her desires, the fact finder may consider whether the child has bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. In re J.D. , 436 S.W.3d 105, 118 (Tex.App.-Houston [14th Dist.] 2014, no pet.). Penny was placed with Ava in February 2017 after a home study was approved. Ava has provided a stable home for Penny and has met the child's needs. Further, Penny is doing well in Ava's care. Laura visited Penny weekly before the child was placed with Ava, but she has not visited her regularly since then. This factor weighs in favor of the best interest finding.
The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. Edwards v. Texas Department of Protective & Regulatory Services , 946 S.W.2d 130, 138 (Tex.App.-El Paso 1997, no pet.), disapproved of on other grounds by In re J.F.C. , 96 S.W.3d 256 (Tex. 2002) ; In re U.P., 105 S.W.3d 222, 230 (Tex.App.-Houston [14th Dist.] 2003) (stating that children need permanency and security). A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. In re D.L.N. , 958 S.W.2d 934, 934 (Tex.App.-Waco 1997, pet. denied). The evidence at trial established that Laura engaged in conduct which endangered the physical and emotional well-being of the child. All five of Laura's children have been removed from her care because she has been unable to provide a stable or safe environment for them. This is true even though Laura has been provided assistance through EHN and the Department created a service plan designed to teach Laura parenting skills. Laura's persistent resistance to taking medication for mental illness has contributed to her difficulties as a parent and the evidence supports an inference that this is unlikely to change in the future. We conclude that the second and third factors weigh heavily in support of the best interest finding.
The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet *860 the physical and emotional needs of the children. D.O. v. Texas Department of Human Services , 851 S.W.2d 351, 356 (Tex.App.-Austin 1993, no writ), disapproved of on other grounds by In re J.F.C., 96 S.W.3d 256 (Tex. 2002). As discussed in the analysis of Issue One, Laura has poor parenting abilities and all five of her children were removed due to neglect and an inability to meet their physical and emotional needs. This factor weighs heavily in favor of the best interest findings.
The fifth factor examines the programs available to assist those individuals to promote the child's best interest. Laura requires assistance to meet her own daily needs and she failed to attend the parenting classes or individual counseling required by the service plan even though she had sixteen months to do so. The fact finder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future. In re W.E.C. , 110 S.W.3d 231, 245 (Tex.App.-Fort Worth 2003, no pet.). This factor supports the court's best interest finding.
We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. D.O. , 851 S.W.2d at 356. Ava asked the trial court to terminate Laura's parental rights so that she could adopt Penny. She explained that this would create a more stable and permanent environment for the child. The Department concurred in this request. The evidence supports a conclusion that Ava's home is a stable environment for Penny and the child's needs are being met. Laura, on the other hand, agreed with Penny's placement with Ava, but she did not want her parental rights to be terminated. Laura indicated she would like to have more time to get her "stuff together" but she did not articulate any specific plan for the child beyond leaving her with Ava. Based on the foregoing evidence, the trial court could have found that Laura's plans for Penny are unrealistic. The sixth and seventh factors weigh in favor of the best interest finding.
The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence established that Laura engaged in conduct which endangered Penny's physical and emotional well-being. Laura was offered parenting classes and individual counseling to address the issues which caused her to neglect her children, but she failed to take advantage of the services. Given the evidence showing that Laura is unable to provide a stable home for Penny or meet her needs, the trial court could have found that the existing parent-child relationship is not a proper one.
The ninth factor is whether there is any excuse for the parent's acts or omissions. Laura's brief does not address this factor. The evidence supports a conclusion that Laura's untreated mental illness is a root cause of her unstable life and neglect of her children. Ava explained that Laura does well when she takes her medication, but she frequently does not take it and this was a source of conflict between them. EHN has attempted to assist Laura by reminding her daily to take her medication, but she has continued to have untreated mental illness. This factor supports the best interest finding.
*861 Having reviewed all of the Holley factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Laura's parental rights is in the child's best interest. Issue Three is overruled. The judgment of the trial court terminating Laura's parental rights to Penny is affirmed.

Rule 9.8(b)(2) requires an appellate court to use in its opinion an alias to refer to a minor in the opinion, and if necessary to protect the minor's identity, the minor's parent, or other family member. Tex.R.App.P. 9.8(b)(2). The term alias means the person's initials or a fictitious name. Tex.R.App.P. 9.8(a). We have opted to use fictitious names rather than initials in this case. The brief filed by the Texas Department of Family and Protective Services uses fictitious names to refer Appellant, the child, and the child's maternal grandmother. Rather than creating different fictitious names, the opinion will refer to the child as "Penny," to Appellant as "Laura," and to the maternal grandmother as "Ava."

Laura was homeless when Penny was born, but the EHN caseworker helped her find a small apartment.