In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00038-CV**

**IN THE INTEREST OF B.P. JR.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-230,174-A**

**MEMORANDUM OPINION**

M.P.[1] appeals the trial court's order terminating her parental rights. In five issues, M.P. challenges the legal and factual sufficiency of the evidence supporting the best-interest finding and the finding that she has a mental or emotional illness that renders her unable to provide for the child, as well as the termination grounds specified in sections 161.001(b)(1)(D), (E), and (O). *See* Tex. Fam. Code Ann.

---

[1]To preserve the privacy of the parties, we refer to the parties and the child by their initials. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

§§ 161.001(b)(1)(D), (E), (O), (2); 161.003(a). We affirm the trial court's judgment terminating M.P.'s parental rights.

## BACKGROUND

In January 2020, the Department of Family and Protective Services ("the Department") filed a petition seeking the termination of M.P.'s parental rights to her son, B.P. Jr. The trial court conducted a bench trial on the Department's petition. Stephanie McGlory, a Department caseworker, testified that in January 2020, the Department took temporary managing conservatorship of B.P. Jr. after receiving a referral alleging the neglectful supervision of B.P. Jr. by M.P. McGlory testified that the removal affidavit indicated that B.P. Jr.'s school was concerned that he had been absent and tardy to school numerous times because M.P. was taking medication and not getting up on time to bring B.P. Jr. to school. McGlory explained that during the investigation, B.P. Jr. reported that there were roaches in his home, his home was cold, and that M.P. was sleeping in her recliner. McGlory testified that when she met with M.P. at the home, she observed that the home had a plywood floor, a mattress in the hallway, and was cluttered with piles of clothes. According to McGlory, M.P. reported that she was behind on rent and had little to no income.

McGlory explained that M.P. blamed B.P. Jr., who was five years old, for allowing her to oversleep. McGlory testified that M.P. reported that she took Wellbutrin for depression on an inconsistent basis and that she was taking her sister's

2

medication without a doctor's approval, which was causing her to sleep through her alarm. McGlory further testified that M.P. admitted to using marijuana and to recently smoking methamphetamine. According to McGlory, the Department was previously involved with M.P. in January 2017, when there were concerns about B.P. Jr. being unsupervised and unattended, and B.P. Jr. was left in the care of his father after M.P. was placed in a behavioral unit for attempting suicide and testing positive for methamphetamine.

McGlory testified that M.P.'s recent psychological report by Dr. Nisha Amin, a licensed psychologist, indicated that M.P. had Bipolar I disorder, generalized anxiety disorder, a substance abuse disorder, a cannabis use disorder, and an unspecified personality disorder with schizoid traits. McGlory testified that Amin reported that M.P. lacked the motivation to seek psychiatric care, as well as the necessary responsibilities to maintain a self-sufficient adult lifestyle. According to McGlory, Amin reported that M.P. needed regular evaluations and would benefit from psychopharmacological intervention, but McGlory testified that Amin indicated that the prognosis was poor that M.P. would maintain long-term psychiatric care. McGlory explained that M.P. had a history of not addressing her mental health issues, and M.P. did not seek help until the end of her case. McGlory also testified that M.P. has a history of self-medicating with illegal drugs, using other people's prescriptions, and failing to follow recommended dosages.

McGlory explained that a Family Plan of Service was developed for M.P. to address the issues that caused the Department to take B.P. Jr. into care, and McGlory went over the plan with M.P. According to McGlory, M.P. did not comply with her plan because she failed to maintain employment, to provide an appropriate home for B.P. Jr. to return to, to submit to drug testing, and refrain from using drugs. McGlory explained that M.P. tested positive six times and never stopped using amphetamines, methamphetamines, and marijuana. According to McGlory, although M.P. completed some of her services, M.P. had not demonstrated a lifestyle change, and M.P. had also been in contact with B.P. Jr.'s father, who was arrested for domestic violence charges committed against M.P.

McGlory further testified that she had reunification concerns based on M.P.'s behavior. According to McGlory, M.P. has public health risks, and within the past three to six months, M.P. may have been exposed to HIV, hepatitis, and sexually transmitted diseases. McGlory testified that M.P. had reported being depressed for weeks at a time and having thoughts of harming or killing herself, and McGlory explained that while M.P. had volunteered to go to inpatient treatment, she left the treatment facility after only a few days. McGlory further testified that it was in the best interest of B.P. Jr. that M.P.'s rights be terminated and to leave B.P. Jr. in the care of relatives who are willing to provide a permanent home for him. According

4

to McGlory, B.P. Jr. has stability in his current placement and no longer misses school.

Kelly Webster, the court coordinator for the family treatment court, testified that M.P. took an assessment for drug court and attended a couple of relapse prevention meetings, but M.P. was never formally accepted into the program because she stopped participating. Schrietta Henson, a supervisor with the Department, testified that it was in B.P. Jr.'s best interest that M.P.'s rights be terminated because M.P., having had sufficient time to complete her family service plan, failed to do so. According to Henson, it is in the best interest of B.P. Jr. to remain in his current placement where his needs are being met.

M.P. testified that there were "[n]ot very many" days when she was drug free during the case, but M.P. explained that she planned to enter inpatient treatment the next day. M.P. explained that she had been using drugs for about thirty-three years and had never been in a drug treatment program. M.P. testified that she did not believe that B.P. Jr. should currently be placed with her, but M.P. explained that she planned to get sober and provide B.P. Jr. a suitable home in the future. M.P. testified that "I made up my mind, and I want my son[,]" and M.P. asked for one more chance. M.P. further testified that she would consider relinquishing her rights to B.P. Jr. so he could have financial security and the things that he deserved, but the following day, M.P. chose to move forward with the trial and went to a drug treatment facility.

According to M.P., if she were tested on the date of the trial, she would test positive for drugs because she smoked marijuana the night before because she "already knew I was gonna lose my kid."

The trial court found that clear and convincing evidence supported three predicate statutory grounds for terminating M.P.'s parental rights, that termination of M.P.'s parental rights was in the best interest of B.P. Jr., and that M.P. has a mental or emotional illness that, in all probability, will continue to render her unable to provide for B.P. Jr.'s needs until B.P. Jr.'s eighteenth birthday. *See id.* M.P. appealed.

## ANALYSIS

In issue one, M.P. contends that the evidence was legally and factually insufficient to support termination of her parental rights under section 161.001(b)(1)(D) of the Family Code, and in issue two, M.P. argues that the evidence was legally and factually insufficient to support termination under section 161.001(b)(1)(E). *See id.* § 161.001(b)(1)(D), (E). In issue three, M.P. challenges the legal and factual sufficiency of the evidence supporting termination of her parental rights under section 161.001(b)(1)(O). *See id.* § 161.001(b)(1)(O). In issue four, M.P. contends that the evidence was legally and factually insufficient to demonstrate that termination of her parental rights is in B.P. Jr.'s best interest. *See id.* § 161.001(b)(2). In issue five, M.P. contends that the evidence was legally and

6

factually insufficient to support the trial court's finding that she has a mental or emotional illness that renders her unable to provide for B.P. Jr. *See id.* § 161.003(a). We address issues one through five together.

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

7

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best-interest finding is also supported by legally and factually sufficient evidence. *In the Interest of C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.). However, when, as here, a parent challenges a trial court's findings under section 161.001(b)(1)(D) or (E), we must review the sufficiency of the evidence supporting those grounds as a matter of due process and due course of law. *In the Interest of N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

Section 161.001(b)(1)(D) of the Family Code allows for termination of a parent's rights if the trier of fact finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for

termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). A parent's conduct in the home can create an environment that endangers the child's physical and emotional well-being. *In the Interest of J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent." *In the Interest of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

For purposes of subsection (E), endangerment means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *In the Interest of M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). Termination under subsection (E) must be based on more than a single act or omission and requires a voluntary, deliberate, and conscious course of conduct by the parent. *Interest of M.L.L.*, 573 S.W.3d at 363-64. A parent's conduct that subjects a child's life to instability and uncertainty endangers the emotional or physical well-being of a child. *Id.* at 363. Endangerment is not limited to actions directed toward the child and includes the parent's actions before the child's birth

9

and while the parent had custody of older children, including evidence of drug usage. *In the Interest of J.O.A.*, 283 S.W.3d at 345.

Courts may consider whether a parent's drug use continues after the child is removed from the parent's care, as such conduct shows a voluntary, deliberate, and conscious course of conduct that endangers a child's well-being. *In the Interest of J.S.*, 584 S.W.3d 622, 635 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see In the Interest of M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied). Evidence of a parent's failure to comply with services to improve her mental health is a factor that the trial court can consider in determining whether a parent has engaged in a course of conduct that endangered the physical and emotional well-being of a child. *In the Interest of S.R.*, 452 S.W.3d 351, 365 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A parent's untreated mental illness can expose a child to endangerment, because when a parent fails to take required medication, the parent can behave erratically and neglect the care of the child. *See In the Interest of P.H.*, 544 S.W.3d 850, 858 (Tex. App.—El Paso 2017, no pet.).

The trial court heard evidence that M.P. had a history with the Department and that there were concerns that B.P. Jr. was being unsupervised and unattended by M.P., who could not wake up to take B.P. Jr. to school due to M.P.'s abuse of medication and illegal drugs. The trial court heard that M.P. has a thirty-three-year history of abusing drugs, and that throughout the case, M.P. continued to use

amphetamines, methamphetamines, and marijuana. The trial court also heard M.P.'s admission that she would test positive on the last day of trial.

The trial judge heard evidence that M.P. has Bipolar I disorder, generalized anxiety disorder, an unspecified personality disorder with schizoid traits, and she needed regular evaluations and psychopharmacological intervention. The trial court also heard that M.P.'s prognosis for maintaining long-term psychiatric care was poor due to her history of not addressing her mental health issues and lack of motivation to seek psychiatric care. The trial court further heard that M.P. has a history of self-medicating with illegal drugs, using other people's prescriptions, and failing to follow recommended dosages. The trial court considered evidence that M.P. has a history of attempting suicide and had reported being depressed and having thoughts of killing herself. The trial court also considered evidence that M.P. has public health risks due to recent exposure to people who may have had HIV, hepatitis, and sexually transmitted diseases.

The trial judge heard evidence that M.P. failed to complete her services and had not maintained employment or provided an appropriate home to which B.P. Jr. could return. The trial court also heard evidence that M.P. lacked the ability to maintain a self-sufficient adult lifestyle and had failed to demonstrate a lifestyle change.

Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that M.P. knowingly placed or knowingly allowed B.P. Jr. to remain in conditions or surroundings which endangered his physical or emotional well-being and engaged in conduct or knowingly placed B.P. Jr. with persons who engaged in conduct that endangered B.P. Jr.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In the Interest of J.F.C.*, 96 S.W.3d at 266; *In the Interest of J.O.A.*, 283 S.W.3d at 345; *In the Interest of J.S.*, 584 S.W.3d at 635; *Interest of M.L.L.*, 573 S.W.3d at 363; *In the Interest of P.H.*, 544 S.W.3d at 858; *In the Interest of S.R.*, 452 S.W.3d at 365; *In the Interest of M.R.J.M.*, 280 S.W.3d at 502; *In the Interest of J.T.G.*, 121 S.W.3d at 125.

Regarding the best-interest inquiry, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72

12

(Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best-interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

"A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In the Interest of M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Evidence of a parent's continued drug use supports a finding that she poses a present and future risk of physical or emotional danger to the child and that termination would be in the child's best interest. *See In the Interest of S.N.*, 272 S.W.3d 45, 53 (Tex. App.—Waco 2008, no pet.). The impact of a parent's mental illness on her ability to parent and the stability of the home are also relevant facts in the best-interest analysis. *In the Interest of R.J.*, 579 S.W.3d 97, 118 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). A parent's potential failure to continue taking medication prescribed for mental illness is also a factor in the analysis of best interest. *See id.*; *Adams v. Tex. Dep't of Family & Protective Servs.*, 236 S.W.3d 271, 281 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

With respect to the best interest of B.P. Jr., the trial court heard evidence that M.P. (1) used marijuana and methamphetamine while B.P. Jr. was living with her, (2) continued to use amphetamines, methamphetamines, and marijuana throughout the case, (3) has a history of not addressing her mental health issues and of using other people's prescriptions and failing to follow recommended dosages, (4) lacked motivation to seek psychiatric care and a had a poor prognosis of maintaining long-term care, (5) has public health risks and reported having suicidal thoughts, (6) failed to complete her family service plan and lacked the necessary responsibilities to maintain a self-sufficient adult lifestyle, (7) failed to maintain employment or provide an appropriate home to which B.P. Jr. could return, and (8) B.P. Jr. is having his needs met and has stability in his current placement which is willing to provide a permanent home.

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of M.P.'s parental rights is in B.P. Jr.'s best interest. *See id*. §§ 161.001(b)(2), 263.307(a); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In the Interest of T.L.B., Jr.*, No. 01-16-00806-CV, 2017 WL 1019520, at *11 (Tex. App.—Houston [1st Dist.] Mar. 16, 2017, no pet.) (mem. op.); *In the Interest of S.N.*,

272 S.W.3d at 53; *In the Interest of M.R.*, 243 S.W.3d at 821; *In the Interest of R.J.*, 579 S.W.3d at 118; *Adams*, 236 S.W.3d at 281.

We conclude that the Department established, by clear and convincing evidence, that M.P. committed the predicate acts enumerated in sections 161.001(b)(1)(D) and (E) and that termination of M.P.'s parental rights is in the best interest of B.P. Jr. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (2); *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule issues one, two, and four. Having concluded that the evidence was legally and factually sufficient to support the trial court's findings as to subsections 161.001(b)(1)(D), (E), and (2), we need not reach issues three and five, in which M.P. challenges the sufficiency of the evidence supporting the trial court's findings under sections 161.001(b)(1)(O) and section 161.003(a). *See In the Interest of N.G.*, 577 S.W.3d at 235; *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1; *see also* Tex. R. App. P. 47.1. Having overruled each of M.P.'s issues, we affirm the trial court's judgment terminating M.P.'s parental rights.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on June 1, 2021
Opinion Delivered June 24, 2021

Before Golemon, C.J., Kreger and Horton, JJ.