**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00313-CV**
_____

**IN THE INTEREST OF M.S.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 21-07-09553-CV**

**OPINION**

After a jury trial, Appellants S.M. ("Mother") and J.S. ("Father")[1] appeal the trial court's order terminating their parental rights to their minor child, M.S. In separate briefs, Mother and Father challenge the legal and factual sufficiency of the evidence supporting the termination grounds specified in sections 161.001(b)(1)(D), (E), (M), and (O). *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (M), and (O). We affirm the trial court's order terminating Mother's and Father's parental rights to M.S.

---

[1]To preserve the privacy of the parties, we refer to the parties and the child by their initials or their familial relationship. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

1

BACKGROUND

The Department of Family and Protective Services ("the Department") filed an Original Petition for Protection of a Child, for Conservatorship, and for the Termination in Suit Affecting the Parent-Child Relationship, seeking the termination of Mother's and Father's parental rights to M.S. The Petition was supported by a Department caseworker's affidavit stating that on July 9, 2021, the Department received a referral alleging neglect of newborn M.S. by her parents, who had three children in the Department's custody. The affidavit stated there were concerns about Mother giving birth at home and about Mother's severe mental health issues that required law enforcement intervention several times in the past. The affidavit indicated M.S. was unsafe in the care of her parents and that Mother had been too aggressive to visit her other children who were in the Department's care.

The affidavit provided Mother's criminal history and history with the Department, which included a report of neglectful supervision in 2017, when Mother delivered a child and both Mother and baby tested positive for marijuana. The affidavit indicated Mother reported having a child die in Michigan where one of her other children was in custody. The affidavit also indicated that in 2019, the Department received three reports alleging physical and neglectful supervision of three other children by both Mother and Father and that there were concerns about drug use and Mother's arrest and mental health. The affidavit stated the children were dirty and did not have adequate clothing and shoes, the baby did not have any

2

formula, and Father reported having concerns about Mother's mental health. According to the affidavit, Mother and Father had been engaged in conservatorship services with the Department since December 2019 and had failed to make the necessary changes and progress for reunification to occur. Based on the affidavit, the trial court found there was an immediate danger to the physical health and safety of M.S. and ordered that the Department be named temporary sole managing conservator of M.S.

In January 2022 and during the pendency of this case, a jury found that Mother's and Father's parental rights to their three other children should be terminated. *See In re F.S.*, No. 09-22-00114-CV, 2022 WL 4371008, at \*3 (Tex. App.—Beaumont Sept. 22, 2022, no pet.). The jury found that Mother's rights should be terminated based on conduct endangerment, condition endangerment, failure to comply with her court-ordered family service plan, and because she has a mental or emotional illness or mental deficiency that renders her unable to care for her children. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (O), 161.003(a). The jury found that Father's rights should be terminated based on conduct and condition endangerment and failure to comply with his court-ordered family service plan. *See id.* § 161.001(b)(1)(D), (E), (O). In September 2022, this Court affirmed the trial court's order terminating Mother's and Father's parent-child relationships with their three other children. *See In re F.S.*, 2022 WL 4371008, at \*9.

3

In August 2022, the trial court conducted a jury trial on the Department's Petition in this case. Sandra Clawson testified that in December 2019, she picked up Mother, who was walking down the road with three children. Clawson testified that Mother was carrying a baby who appeared to be a couple of months old and the other two children appeared to be two or three years old and were walking without shoes. After Clawson took Mother to the store and got milk for the baby, Mother screamed at Clawson to get out of the vehicle because Mother thought it was hers. Clawson pulled into a parking lot near a constable who assisted her with Mother. Clawson explained that when she looked in Mother's bag for diapers, she saw pills in the bag. Clawson further explained that after the constable took Mother to jail, Child Protective Services ("CPS") came and took the children.

Tara Bauch, a CPS investigator, testified that the day before the incident with Mother occurred, she received a case on the family alleging physical abuse of the children by the maternal grandmother, but was unable to locate the children. Bauch explained that when she arrived at the parking lot, she observed that the baby had marks on her stomach and needed medical attention and that one of the children had a mark on her face. Bauch also explained that the children were barefoot and dirty. Bauch testified that when she talked to Mother she did not make sense and appeared to be under the influence, but she tested negative for drugs. Bauch explained that based on Mother's behavior, she was also concerned about postpartum depression and mental health. Bauch testified that Mother was arrested and was taken to jail and

4

the baby was taken to the hospital, and she removed the children and placed them in foster care.

Bauch testified that she met with Father, who admitted using marijuana and leaving the children with Mother when he knew something was wrong with her. Bauch testified that Father wanted the children back, but she had concerns about drug use and his decision to leave the children with Mother when he admitted that he knew he should not have left them. Bauch explained that Father reported the maternal grandmother was not an appropriate caregiver, and Bauch found there was reason to believe physical abuse by the maternal grandmother. Bauch believed there was neglectful supervision by Father because he left the children with Mother. Bauch also believed there was neglectful supervision by Mother because she was arrested and unable to provide a safe living environment for the children.

Bauch testified that a few days after Mother gave birth to M.S. in June 2021, she received a complaint regarding M.S. Bauch explained that M.S. was vulnerable because the family had not completed services regarding Mother and Father's other three children who were removed. Bauch testified that the Department removed M.S. because there was great concern for M.S.'s safety due to the way the other children were found. Bauch explained she was concerned about Mother's mental health and Father's lack of protective capability and failure to submit to drug testing. Bauch further explained that an investigation regarding M.S. found there was reason to believe there was neglectful supervision by Mother and Father. Bauch stated the

neglect was based on the reasons for the December 2019 case concerning the removal of the other children which was still an open case. Bauch explained that since 2019, the family had not moved towards the monitored return of the other children who were three and four years old, and the Department would not allow a vulnerable newborn to stay in an unsafe situation. Bauch testified that Mother was not visiting the other children due to concerns about her behavior during visits.

Minnesha Fridie-Scott, a Department conservatorship caseworker in the parents' prior case, testified that Mother and Father had service plans. Fridie-Scott explained that Mother's visits with the children were suspended due to her behavior. Fridie-Scott testified Mother's and Father's service plans required drug testing, but both parents failed to comply. Bob Jefferis, the CASA advocate in the parents' prior case, testified he was concerned that the parents were not visiting the children or doing their services and drug testing. Jefferis testified that when he and Fridie-Scott visited the parents' home in September 2020, Father made verbally aggressive complaints about CPS and racial complaints about Fridie-Scott. Jefferis explained that he talked to Father about restarting his services and visits, and although the parents began working on services and drug testing, their rights to their three children were terminated. Jefferis explained that he recommended termination because he was concerned that Mother had untreated mental health issues and was unable to supervise the children's safety on her own, and there were no alternate

caregivers to supervise the children when Father was working. Jefferis further explained that the parents failed to complete their service plans.

Jefferis was also assigned to M.S.'s case. Jefferis testified that M.S was thriving in her current placement. Jefferis explained that he recommended terminating the parents' parental rights to M.S. because: (1) Mother has untreated mental health issues and is unable to supervise the child; (2) there are no available alternative caregivers; (3) the parents had not completed their service plans; (4) the parents had not drug tested for the past six months; and (5) there were concerns about a lack of income in the home.

Myrissa Hutchinson, a Department caseworker, testified that the parents had not completed their services, including drug testing and verifiable employment. Hutchinson explained that the biggest concerns in the parents' case were Mother's mental illness, stable housing, and domestic violence. Hutchinson testified the parents had not successfully addressed those issues. Hutchinson explained that in the parents' prior case involving the other three children, their parental rights were terminated based on a determination that they endangered the children. Hutchinson testified that it was in M.S.'s best interest that the parents' parental rights be terminated and for M.S. to be adopted by her foster parents.

Eunice Roman, M.S.'s foster mother, testified that she has been caring for M.S. for approximately one year, and M.S. just celebrated her first birthday. Roman testified that during the past few visits with the parents, M.S. has been very agitated

and clingy. Roman explained M.S. is happy and meeting all her developmental milestones. Roman testified she would like to adopt M.S.

Cody Lowery, a Sergeant with the Montgomery Sheriff's Office testified that in November 2019, he encountered Mother when he was called out to conduct a welfare check. Lowery testified that Mother was in a delusional state and nonresponsive, and his partner had to tase and detain Mother because she became very aggressive. Lowery further explained that a witness observed Mother screaming and cursing at multiple pedestrians and passing vehicles and jumping in front of vehicles. Lowery testified that Mother reported that she had a child in the past few weeks. Mother also stated she did not take medication for her disorders but self-medicated. Lowery placed her on an emergency detention order and took her to the hospital.

Khurram Shaikh, a psychiatrist, testified that in May 2020, he was the attending doctor when Mother was involuntarily admitted to the hospital for psychosis. Shaikh testified that the police reported Mother was walking in traffic and being belligerent, and Mother reported a history of inpatient and outpatient psychiatric and substance abuse treatment, a bipolar diagnosis, noncompliance with medication, self-medication, marijuana and alcohol use, childhood and adult trauma, and no support. Shaikh explained that Mother was manic and delusional and reported that her children were kidnapped by the State. Shaikh testified that Mother's discharge diagnosis was schizoaffective disorder bipolar type and cannabis use

disorder, and he prescribed medications for Mother's mania and psychosis. Shaikh further testified that if a patient with Mother's diagnosis fails to take their medicine, she would continue to have episodes with worsening symptoms and have compromised functioning.

Austin Roper testified that in January 2020, he was working as a patrol deputy with the Montgomery County Sheriff's Office when he received a disturbance call regarding an assault. Roper testified that he detained Mother after she became verbally aggressive and claimed to be an undercover cop. Roper explained that the victim had wounds on her legs, and Father reported the victim started the altercation. Roper arrested Mother and charged her with Class A assault. Roper testified there were no children at the scene.

Chandra Murray testified that in July 2022, she encountered Mother at the grocery store, and Mother asked her to buy her some groceries. Murray testified that Mother wanted more items than she could afford, and an employee told Mother she could not come into the store. Murray explained that after Mother screamed at her and the manager, she continued to argue with Mother in the parking lot, and Mother knocked her down. Murray testified the police arrested Mother.

Terra Long, the parents' neighbor, testified that a few times she observed Mother and Father pull out guns while they were fighting with each other in their front yard. Long also observed Mother push Father. Long testified that there were two boys present when she observed the parents fighting.

9

Mother testified that her first child was born in 2009 and passed away, and her second child was born in 2011, and her parental rights were terminated after she told the Department to take the baby because she was a single mother. Mother explained that her third child lives with a relative and she had not seen him in about four years. Mother testified that she had postpartum depression when the incident with Clawson occurred, and her parental rights to her three children were terminated even though she had not endangered her children. Mother claimed she did everything the Department required her to do except completing a domestic violence assessment. Mother testified that she and Father live with her aunt, and she was not employed but Father worked every day. Mother further testified that she had never endangered M.S. or allowed Father to endanger M.S. Mother also testified she had not used drugs for approximately three years, and she disagreed with Shaikh's diagnosis and did not take the medications he recommended.

Mother explained she has struggled with mental health issues most of her life and had been hospitalized approximately three times. Mother testified she was prescribed medications, but she quit taking them because of the side effects. Mother testified she has a history of substance abuse, and her criminal history includes convictions for prostitution, assault bodily injury, assault public servant, and criminal trespass, and she was recently arrested for assault. Mother also testified that she has received several criminal trespass warnings and was not allowed to return to several local stores.

Father testified that his rights to his other three children were terminated. Father testified that when Mother was arrested in December 2019 and January 2020, he knew something was wrong. Father could not recall the last time Mother's behavior concerned him, but he claims he "would have handled it." Father explained that he looks for signs to see if Mother needs any help, but her behavior had not recently caused any concern. Father believed it was okay to leave the children with Mother because she has never harmed a child and was currently showing signs of good mental health. Father explained he would call for help if Mother had any mental health symptoms, but he was being held accountable for not knowing the signs or being aware of Mother's actions while he was at work. Father testified that it had been a year and a half since he smoked marijuana, which was during his previous CPS case. Father testified that he works construction for cash because he makes more money, and he and Mother are temporarily living with Mother's aunt.

A jury found that termination of Mother's parental rights to M.S. was in M.S.'s best interest, Mother has a mental or emotional illness that renders her unable to provide for the child, and there were three predicate statutory bases for termination including condition endangerment, conduct endangerment, and failure to comply with a court-ordered family service plan. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (M), (O), (2), 161.003(a). A jury also found that termination of Father's parental rights to M.S. was in M.S.'s best interest and that there were three predicate statutory bases for termination including condition

11

endangerment, conduct endangerment, and failure to comply with a court-ordered family service plan. *See id.* § 161.001(b)(1)(D), (E), (M), (O), (2). The trial court signed an Order of Termination adopting the jury's findings and terminating Mother's and Father's parental rights to M.S.

## ANALYSIS

In separate briefs, Mother and Father challenge the legal and factual sufficiency of the evidence supporting the termination grounds specified in sections 161.001(b)(1)(D), (E), (M), and (O). *See id.* § 161.001(b)(1)(D), (E), (M), and (O). Mother and Father complain that all the evidence presented to support termination under sections 161.001(b)(1)(D) and (E) related to the prior termination concerning their other children.[2]

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.*

---

[2]It should be noted that Mother and Father do not challenge the best interest finding.

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (citation omitted). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also In re J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best interest finding is also supported by legally and factually sufficient evidence. *In re C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.). However, when, as here, a parent challenges a trial court's findings

13

under section 161.001(b)(1)(D) or (E), we must review the sufficiency of those grounds as a matter of due process and due course of law. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

Section 161.001(b)(1)(D) of the Family Code allows for termination of a parent's rights if the trier of fact finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id*. § 161.001(b)(1)(E). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). A parent's conduct in the home can create an environment that endangers the child's physical and emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (citations omitted).

For purposes of subsection (E), endangerment means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *In re*

14

*M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). Termination under subsection (E) must be based on more than a single act or omission and requires a voluntary, deliberate, and conscious course of conduct by the parent. *In re M.L.L.*, 573 S.W.3d at 363-64. A parent's conduct that subjects a child's life to instability and uncertainty endangers the emotional or physical well-being of a child. *Id.* at 363. Endangerment is not limited to actions directed toward the child and includes the parent's actions before the child's birth and while the parent had custody of older children, including evidence of drug usage. *In re J.O.A.*, 283 S.W.3d at 345.

Courts may consider whether a parent's drug use continues after the child is removed from the parent's care, as such conduct shows a voluntary, deliberate, and conscious course of conduct that endangers a child's well-being. *See In re J.S.*, 584 S.W.3d 622, 635 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see also In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied). The trial court may infer from a parent's refusal to submit to drug testing that they are using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). Evidence of a parent's failure to comply with services to improve their mental health is a factor that the trial court can consider in determining whether a parent has engaged in a course of conduct that endangered the physical and emotional well-being of a child. *In re S.R.*, 452 S.W.3d 351, 365 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A parent's untreated mental illness can expose a child to endangerment, because when a parent fails to take required

15

medication, the parent can behave erratically and neglect the care of the child. *See In re P.H.*, 544 S.W.3d 850, 857-58 (Tex. App.—El Paso 2017, no pet.).

"Domestic violence and a propensity for violence may be considered evidence of endangerment, even if the endangering acts did not occur in the child's presence, were not directed at the child, or did not cause actual injury to the child." *In re K.A.R.*, No. 04-17-00723-CV, 2018 WL 1733147, at *3 (Tex. App.—San Antonio Apr. 11, 2018, pet. denied) (mem. op.); *see Tex. Dept. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Abusive or violent conduct by a parent can produce an environment endangering the child's physical or emotional well-being. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied).

Concerning Mother, the jury heard evidence that she had a history with the Department that included allegations of neglectful supervision and that her parental rights to her other three children were terminated based on endangerment. The jury heard that Mother exhibited unstable behavior and had untreated mental health issues that created an environment that endangered M.S. and that Mother failed to take medications to treat her issues and chose to self-medicate. The jury heard that Mother had a propensity for violent conduct and had been arrested several times for assaultive behavior. The jury heard that Mother failed to complete her services and submit to drug testing during this case's pendency despite her service plan's requirement.

16

Viewing the evidence in the light most favorable to the jury's findings, we conclude that the jury could reasonably have formed a firm belief or conviction that Mother knowingly placed or knowingly allowed M.S. to remain in conditions or surroundings which endangered her physical or emotional well-being and engaged in conduct or knowingly placed M.S. with persons who engaged in conduct that endangered M.S.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In re J.F.C.*, 96 S.W.3d at 266; *In re J.O.A.*, 283 S.W.3d at 345; *Boyd*, 727 S.W.2d at 533; *In re J.S.*, 584 S.W.3d at 635; *In re M.L.L.*, 573 S.W.3d at 363; *In re P.H.*, 544 S.W.3d at 857-58; *In re S.R.*, 452 S.W.3d at 365; *In re M.R.J.M.*, 280 S.W.3d at 502; *In re K.C.B.*, 280 S.W.3d at 895; *In re K.A.S.*, 131 S.W.3d at 222; *In re J.T.G.*, 121 S.W.3d at 125; *In re K.A.R.*, 2018 WL 1733147, at *3.

Concerning Father, the jury heard evidence that he a had a history with the Department that included allegations of neglectful supervision and that his parental rights to his other three children were terminated based on endangerment. The jury heard that Father left his three children with Mother when he knew something was wrong with her, and the Department was concerned about Father's lack of protective capability. The jury heard that Father failed to complete his services and submit to drug testing during this case's pendency despite his service plan's requirement, and he admitted to using marijuana after his other three children were removed and

17

placed in the Department's care. The jury also heard that the Department had domestic violence concerns regarding Father.

Viewing the evidence in the light most favorable to the jury's findings, we conclude that the jury could reasonably have formed a firm belief or conviction that Father knowingly placed or knowingly allowed M.S. to remain in conditions or surroundings which endangered her physical or emotional well-being and engaged in conduct or knowingly placed M.S. with persons who engaged in conduct that endangered M.S.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In re J.F.C.*, 96 S.W.3d at 266; *In re J.O.A.*, 283 S.W.3d at 345; *Boyd*, 727 S.W.2d at 533; *In re J.S.*, 584 S.W.3d at 635; *In re M.L.L.*, 573 S.W.3d at 363; *In re M.R.J.M.*, 280 S.W.3d at 502; *In re K.C.B.*, 280 S.W.3d at 895; *In re K.A.S.*, 131 S.W.3d at 222; *In re J.T.G.*, 121 S.W.3d at 125; *In re K.A.R.*, 2018 WL 1733147, at *3.

We conclude that the Department established, by clear and convincing evidence, that Mother and Father committed the predicate acts enumerated in sections 161.001(b)(1)(D) and (E). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In re C.A.C., Jr.*, 2011 WL 1744139, at *1. Having concluded that the evidence was legally and factually sufficient to support the trial court's findings as to subsections 161.001(b)(1)(D) and (E), we need not address Mother's and Father's challenges regarding the trial court's findings under sections 161.001(b)(1)(M) and (O). *See In re N.G.*, 577 S.W.3d at 235; *In re C.A.C., Jr.*, 2011 WL 1744139, at

18

*1; *see also* Tex. R. App. P. 47.1. Having addressed each of Mother's and Father's arguments, we overrule their issues raised in their respective briefs and affirm the trial court's order terminating Mother's and Father's parental rights to M.S.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on January 24, 2023
Opinion Delivered February 2, 2023

Before Golemon, C.J., Johnson and Wright, JJ.